IN RE the COMMITMENT OF Thomas H. BUSH:

STATE of Wisconsin, Petitioner-Respondent,

v.

Thomas H. BUSH,
Respondent-Appellant-Petitioner.

Supreme Court

*No. 2003AP2306. Oral argument April 29, 2005.*
*—Decided July 6, 2005.*

2005 WI 103

(Also reported in 699 N.W.2d 80.)

91

For the respondent-appellant-petitioner there were briefs by *Robert G. LeBell* and *Kostich, LeBell, Dobroski & Morgan LLP,* Milwaukee, and oral argument by *Robert G. LeBell.*

For the petitioner-respondent the cause was argued by *Sally L. Wellman,* assistant attorney general, with whom on the brief was *Peggy A. Lautenschlager,* attorney general.

¶ 1. LOUIS B. BUTLER, JR., J. Thomas H. Bush seeks review of a published court of appeals decision that affirmed a circuit court's order denying two pretrial motions challenging the constitutionality of Wis. Stat. ch. 980 (chapter 980) (2001–02).[1] *State v. Bush,* 2004 WI App 193, 276 Wis. 2d 806, 688 N.W.2d 752 (*Bush III*). The court of appeals concluded that Bush was procedurally barred from raising a constitutional challenge against chapter 980. *Id.,* ¶ 19.

¶ 2. Bush asks this court to reverse the court of appeals' decision and hold that he is not procedurally barred from bringing this constitutional claim. Bush further asks this court to conclude that chapter 980 is facially unconstitutional on substantive due process grounds in that it does not require proof of a "recent overt act" when there has been a break in the offender's incarceration and the offender has been reincarcerated for nonsexual behavior.

¶ 3. Although the State argues that Bush has waived the issue regarding his constitutional challenge to chapter 980, we reach the issue's merits. We conclude that due process does not require a showing of a recent overt act when there is a break in the offender's incarceration and the offender is subsequently reincarcerated

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise indicated.

for nonsexual behavior in order to prove current dangerousness. We decline to adopt a bright-line rule that requires current dangerousness to be proven by a particular type of evidence. Accordingly, we affirm the decision of the court of appeals.

I

¶ 4. The following facts are undisputed and were stipulated to by the parties at trial:

> Mr. Bush was convicted in 1988 of attempted second degree sexual assault, which, the state maintains, is the predicate act authorizing the filing of the original petition for a Chapter 980 commitment. Subsequent to his 1988 conviction, Mr. Bush was paroled and was permitted to leave the State of Wisconsin in 1992. He was arrested in 1992 for operating under the influence, but was acquitted of that charge. As a direct result of his arrest for the operating under the influence charge, he was returned to the State of Wisconsin to face revocation proceedings. Ultimately, he was revoked as a result of drinking related events. At no time was he charged with any new sexually violent offense after the 1988 assault. His revocation was as a consequence to non-sexually assaultive behavior. These violations did not constitute recent overt acts of sexual violence. No evidence was provided in the petition to reflect that the respondent committed any "recent overt act," nor was any evidence, consistent with a "recent overt act," introduced at the time of the probable cause hearing.

¶ 5. The following additional facts are also helpful for our analysis.[2] When Bush was arrested for attempted second-degree sexual assault in 1988, he had

[2] As seen below, Bush has had two commitment hearings, one in 1997 and another in 2000. The current appellate record does not contain the trial transcripts from the 2000 commit-

been placed on parole just 26 days prior for a conviction of attempted first-degree sexual assault. Prior to his 1988 conviction, Bush was convicted of numerous sex-related offenses, which include: two counts of sexual assault, three counts of sexual perversion, three counts of disorderly conduct (including a "Peeping Tom" offense), two counts of second-degree criminal sexual conduct, and two counts of attempted sexual assault. By 1988, Bush had been incarcerated or under probation and parole community supervision almost continuously in Illinois, Michigan, Minnesota, and Wisconsin since his first conviction in 1966. Aside from these convictions, Bush admitted committing other deviant sexual behavior than that for which he had been arrested.

¶ 6. In 1992, while serving the sentence for his 1988 conviction, Bush completed the Oshkosh Sex Offender Treatment Program. He was placed on parole to attend the Behavioral Medicine Institute of Atlanta, Georgia. He successfully completed the inpatient component of the Georgia program, but failed to comply with the requirements of the outpatient program, in violation of the conditions of his parole, by purchasing a sports car without knowledge or permission of the

---

ment hearing. Although we do have the exhibits and a list of which exhibits were admitted at trial, we do not know if any of the exhibits were admitted for limited purposes. We will assume that they were not. Further, we do not know if any exhibits from the prior commitment hearing in 1997 were incorporated by reference during the 2000 commitment hearing. As they are part of our record here, we will assume that they were. *See State v. McAttee*, 2001 WI App 262, ¶ 5 n.1, 248 Wis. 2d 865, 637 N.W.2d 774 ("It is the appellant's responsibility to ensure completion of the appellate record and when an appellate record is incomplete in connection with an issue raised by the appellant, we must assume that the missing material supports the trial court's ruling." (citation and quotations omitted)).

program, drinking alcohol, and getting in a car accident.[3] His parole was revoked and he was incarcerated again in Wisconsin.

¶ 7. In addition to Bush's prior convictions, since at least 1978, Bush's psychiatric evaluations have expressed the opinion that Bush is among those sexual offenders who are the least likely to change their behavior. More recent evaluations conducted in 1996 and 1997 recommended that Bush be closely supervised and identified Bush as posing a high risk of recidivism, despite his extensive participation in sex-offender treatment. Furthermore, while incarcerated, Bush continued to demonstrate behavior that is predictive of the likelihood that he will reoffend. For example, Bush was reprimanded in 1995 for attempting to purchase pornography and for corresponding by mail with a person who was engaged in "grooming a boy for sexual purposes."

¶ 8. In 1997, while Bush remained incarcerated for his 1988 offense, the State filed a chapter 980 petition,[4] alleging that Bush was still sexually violent. See *Bush III*, 276 Wis. 2d 806, ¶ 3; *see also State v.*

---

[3] Although driving while intoxicated does not necessarily raise concerns for sexually violent behavior, drinking and driving are a particularly dangerous combination for Bush. The record demonstrates that "Mr. Bush has specific triggers regarding his sex offender criminal activity which includes alcohol and fast cars."

[4] Wisconsin Stat. § 980.02(2) outlines the procedures for filing a petition alleging an offender is a sexually violent person as follows:

(2) A petition filed under this section shall allege that all of the following apply to the person alleged to be a sexually violent person:

(a) The person satisfies any of the following criteria:

*Bush,* No. 1997AP3454, unpublished slip op. (Wis. Ct. App. Dec. 22, 1998) (*Bush I*). Following the trial on that petition, the jury found that Bush was sexually violent. *See Bush III,* 276 Wis. 2d 806, ¶ 3. Bush appealed and the court of appeals reversed his commitment because of a prejudicial jury instruction. *Id.*

¶ 9. In 2000, Bush was retried and a second jury came to the same conclusion. *Id.,* ¶ 4. Bush again appealed, arguing that: (1) the State's expert witnesses should have been disqualified; (2) the State failed to present sufficient evidence to meet chapter 980's requirements; and (3) the State failed to file the petition within the requisite 90 days. *State v. Bush,* No. 2001AP588, unpublished slip op. at ¶ 1 (Wis. Ct. App. Nov. 26, 2002) (*Bush II*). The court of appeals affirmed in all respects except whether the State had filed the

1. The person has been convicted of a sexually violent offense.

2. The person has been found delinquent for a sexually violent offense.

3. The person has been found not guilty of a sexually violent offense by reason of mental disease or defect.

(ag) The person is within 90 days of discharge or release, on parole, extended supervision or otherwise, from a sentence that was imposed for a conviction for a sexually violent offense, from a secured correctional facility, as defined in s. 938.02 (15m), from a secured child caring institution, as defined in s. 938.02 (15g), or from a secured group home, as defined in s. 938.02 (15p), if the person was placed in the facility for being adjudicated delinquent under s. 938.183 or 938.34 on the basis of a sexually violent offense or from a commitment order that was entered as a result of a sexually violent offense.

(b) The person has a mental disorder.

(c) The person is dangerous to others because the person's mental disorder makes it likely that he or she will engage in acts of sexual violence.

chapter 980 petition in a timely manner. *See Bush III*, 276 Wis. 2d 806, ¶ 4. On remand, the trial court determined that the State had complied with the filing requirements of chapter 980. *Id.,* ¶ 4.

¶ 10. In August 2002, Bush filed a petition for release under Wis. Stat. § 980.09(2).[5] *Bush III*, 276 Wis.

[5] Wisconsin Stat. § 980.09(2) reads as follows:

(a) A person may petition the committing court for discharge from custody or supervision without the secretary's approval. At the time of an examination under s. 980.07 (1), the secretary shall provide the committed person with a written notice of the person's right to petition the court for discharge over the secretary's objection. The notice shall contain a waiver of rights. The secretary shall forward the notice and waiver form to the court with the report of the department's examination under s. 980.07. If the person does not affirmatively waive the right to petition, the court shall set a probable cause hearing to determine whether facts exist that warrant a hearing on whether the person is still a sexually violent person. The committed person has a right to have an attorney represent him or her at the probable cause hearing, but the person is not entitled to be present at the probable cause hearing.

(b) If the court determines at the probable cause hearing under par. (a) that probable cause exists to believe that the committed person is no longer a sexually violent person, then the court shall set a hearing on the issue. At a hearing under this paragraph, the committed person is entitled to be present and to the benefit of the protections afforded to the person under s. 980.03. The district attorney or the department of justice, whichever filed the original petition, shall represent the state at a hearing under this paragraph. The hearing under this paragraph shall be to the court. The state has the right to have the committed person evaluated by experts chosen by the state. At the hearing, the state has the burden of proving by clear and convincing evidence that the committed person is still a sexually violent person.

(c) If the court is satisfied that the state has not met its burden of proof under par. (b), the person shall be discharged from the custody or supervision of the department. If the court is satisfied that the state has met its burden of proof under par. (b), the court may proceed to determine, using the criteria specified in s. 980.08(4)(b),

2d 806, ¶ 5. In the pretrial motions, Bush argued, in pertinent part, that he had been denied due process because chapter 980 failed to require proof of a recent overt act. *Id.* The circuit court for Eau Claire County, Honorable William M. Gabler, denied Bush's pretrial motions, and a jury determined that Bush was still sexually violent. *Id.,* ¶ 6. His petition for discharge was therefore denied. *Id.*

¶ 11. Bush again appealed, renewing his argument he made for the first time in the circuit court that chapter 980 is unconstitutional because it does not require a recent overt act. The State argued that Bush should not be allowed to attack the underlying commitment on constitutional grounds because he should have made this challenge in his two prior appeals. *Id.,* ¶ 7. The court of appeals agreed with the State and concluded that Bush was procedurally barred from raising the issue of the constitutionality of chapter 980. *Id.,* ¶¶ 8, 19.

¶ 12. Bush seeks review, and we affirm.

## II

¶ 13. Bush challenges the constitutionality of chapter 980 on due process grounds, alleging that the statute fails to require a finding of a recent overt act. The constitutionality of a statute is a question of law which we review de novo. *State v. Randall,* 192 Wis. 2d 800, 824, 532 N.W.2d 94 (1995). This court has already determined that the State has dual interests under the statute to protect the public from the dangerously

whether to modify the person's existing commitment order by authorizing supervised release.

mentally disordered and to provide care and treatment to those with mental disorders that predispose them to sexual violence. *State v. Post*, 197 Wis. 2d 279, 302, 541 N.W.2d 115 (1995). The Supreme Court has recognized both of these interests as legitimate, the first under a state's police powers and the latter under its *parens patriae* powers. *Id.* (citing *Addington v. Texas*, 441 U.S. 418, 426 (1979)). Thus, the issue is whether chapter 980 is narrowly tailored under the circumstances in this case to serve these compelling state interests. *Id.*

### III

¶ 14. Before addressing the merits of Bush's argument, we first address a procedural issue. Relying on *State v. Trochinski*, 2002 WI 56, 253 Wis. 2d 38, 644 N.W.2d 891, *State v. Molitor*, 210 Wis. 2d 415, 565 N.W.2d 248 (Ct. App. 1997), and *State ex rel. Skinkis v. Treffert*, 90 Wis. 2d 528, 280 N.W.2d 316 (Ct. App. 1979), Bush asserts that facial challenges to the constitutionality of a statute present issues of subject matter jurisdiction which cannot be waived, notwithstanding his failure to raise that challenge in his earlier appeals.

¶ 15. The State, on the other hand, argues that the law in this area lacks clarity and is inconsistent. While the State recognizes the validity of those cases relied upon by Bush, it nevertheless suggests that those cases have not always been followed.[6] Moreover, the State argues that another line of cases, culminating in

---

[6] *See State v. Wilks*, 121 Wis. 2d 93, 107, 358 N.W.2d 273 (1984) (where court declined to address defendant's claim that loitering ordinance was unconstitutionally vague when raised for first time on appeal); *In re Baby Girl K.*, 113 Wis. 2d 429, 448, 335 N.W.2d 846 (1983) (where court considered facial

this court's decision last term in *Village of Trempealeau v. Mikrut,* 2004 WI 79, ¶¶ 2, 30, 273 Wis. 2d 76, 681 N.W.2d 190, suggest that pursuant to Article VII, Section 8 of the Wisconsin Constitution,[7] "no circuit court is without subject matter jurisdiction to entertain actions of any nature whatsoever." *Mikrut,* 273 Wis. 2d 76, ¶ 8; *see Mueller v. Brunn,* 105 Wis. 2d 171, 175, 313 N.W.2d 790 (1982); *Eberhardy v. Cir. Ct. for Wood Co.,* 102 Wis. 2d 539, 307 N.W.2d 881 (1981).

¶ 16. We agree with the State that the jurisprudence concerning subject matter jurisdiction and a circuit court's competence to exercise its subject matter jurisdiction is murky at best. Nevertheless, we have recently resolved this area as Bush suggests, and we reaffirm those decisions here.

¶ 17. In both *State v. Cole,* 2003 WI 112, ¶ 46, 264 Wis. 2d 520, 665 N.W.2d 328, and *Trochinski,* 253 Wis. 2d 38, ¶ 34 n.15, this court concluded that while an "as applied" challenge to the constitutionality of a statute may be waived, a facial challenge is a matter of subject matter jurisdiction and cannot be waived. The logic

constitutional challenge raised for first time on appeal as discretionary but to be done if in best interests of justice); and *Sambs v. City of Brookfield,* 66 Wis. 2d 296, 314, 224 N.W.2d 582 (1975) (court declined to reach claim presented for first time on appeal that liability limits are unconstitutional, although it is not clear whether that challenge was facial or as applied). *See also State v. Thomas,* 128 Wis. 2d 93, 97–101, 381 N.W.2d 567 (Ct. App. 1985) (facial challenges that a statute is unconstitutionally vague go to subject matter jurisdiction).

[7] Under the Wisconsin Constitution, "[e]xcept as otherwise provided by law, the circuit court shall have original jurisdiction in all matters civil and criminal within this state . . . ." Wis. Const. art. VII, § 8.

behind this conclusion is entirely consistent with Article VII, Section 8 of the Wisconsin Constitution. Article VII, Section 8 states that "[e]xcept as otherwise provided by law," circuit courts have original jurisdiction "in all matters civil and criminal." If a statute is unconstitutional on its face, any action premised upon that statute fails to present any civil or criminal matter in the first instance. As the court of appeals correctly noted in *Skinkis,* if the facial attack on the statute were correct, the statute would be null and void, and the court would be without the power to act under the statute. *Skinkis,* 90 Wis. 2d at 538. This is contrasted from an "as applied" challenge, where the court initially has jurisdiction over the subject matter, as the statute is valid upon its face.

¶ 18. This rule is also entirely consistent with our line of cases that recognize that a criminal complaint which fails to allege any offense known at law is jurisdictionally defective and void. *See Champlain v. State,* 53 Wis. 2d 751, 754, 193 N.W.2d 868 (1972); *State v. Lampe,* 26 Wis. 2d 646, 648, 133 N.W.2d 349 (1965). Once again, the premise behind the rule is simple. Circuit courts have original jurisdiction over all matters civil and criminal, except as otherwise provided by law. If a complaint fails to state an offense known at law, no matter civil or criminal is before the court, resulting in the court being without jurisdiction in the first instance.

¶ 19. We conclude that because Bush has facially challenged the constitutionality of chapter 980, his challenge goes to the subject matter jurisdiction of the

court. Therefore, because challenges to subject matter jurisdiction cannot be waived, we reach the merits of his claim.[8]

## IV

¶ 20. We now consider the substance of Bush's argument. Chapter 980 applies only if an offender is a "sexually violent person." Wisconsin Stat. § 980.01(7) defines a sexually violent person as follows:

> "Sexually violent person" means a person who has been convicted of a sexually violent offense, has been adjudicated delinquent for a sexually violent offense, or has been found not guilty of or not responsible for a sexually violent offense by reason of insanity or mental disease, defect, or illness, and who is *dangerous* because he or she suffers from a mental disorder that makes it likely that the person will engage in acts of sexual violence. (Emphasis added.)

¶ 21. Bush argues that Wis. Stat. chapter 980 is facially unconstitutional because it does not require a showing of a recent overt act to prove that an offender

---

[8] Common law principles of waiver generally apply to Bush's "as applied" constitutional challenge. *See State v. Erickson,* 227 Wis. 2d 758, 766, 596 N.W.2d 749 (1999) (noting that the waiver rule exists to promote efficiency and fairness); *see also State v. Cole,* 2003 WI 112, ¶ 46, 264 Wis. 2d 520, 665 N.W.2d 328, and *State v. Trochinski,* 2002 WI 56, ¶ 34 n.15, 253 Wis. 2d 38, 644 N.W.2d 891. Because Bush failed to raise this issue in his earlier appeals, and because we do not have all components of the record, we conclude that Bush has waived his *as applied* challenge. However, we decline to reach the question of whether a procedural bar, similar to one announced in *State v. Escalona-Naranjo,* 185 Wis. 2d 168, 517 N.W.2d 157 (1994), applies.

is currently dangerous. Specifically, Bush contends that chapter 980 violates due process because it fails to require a showing of a recent overt act to prove current dangerousness when there has been a break in the offender's incarceration and the offender has been reincarcerated for nonsexual behavior.

¶ 22. Bush asks this court to adopt the rationale used by the Washington Supreme Court in *In re Albrecht,* 51 P.3d 73 (Wash. 2002). In that case, the Washington Supreme Court concluded that when an offender has been released into the community and his or her release is revoked for a nonsexually violent act, due process requires that the state show a recent overt act by the offender.[9] *Albrecht,* 51 P.3d at 78; *see also In re Young,* 857 P.2d 989, 1009 (Wash. 1993).[10] The Washington Supreme Court reasoned that the constitutionality of an involuntary civil commitment is predicated on proof that the offender is dangerous and that his or her dangerousness is current. *Albrecht,* 51 P.3d at 76 (citing *Foucha v. Louisiana,* 504 U.S. 71, 80 (1992)).

[9] According to the Washington court, a "recent overt act" is "any act that has either caused harm of a sexually violent nature or creates a reasonable apprehension of such harm." *In re Albrecht,* 51 P.3d 73, 77 (Wash. 2002). When the individual has been continuously incarcerated, no evidence of a recent overt act is required because that would create an impossible standard. *Id.* at 77.

[10] In *In re Young,* 857 P.2d 989, 1009 (Wash. 1993), the Washington Supreme Court held that when an offender has been released from confinement since his or her last sex offense, but before sexually violent predator proceedings are initiated against him or her, the state had to prove he or she committed a recent overt act in order to establish dangerousness. The Washington Legislature amended its sexual predator commitment statute to reflect the court's decision. *State v. Ward,* 104 P.3d 751, 753 (Wash. Ct. App. 2005).

Once an offender has been released into the community and is later incarcerated for a nonsexually violent offense, the offender "cannot necessarily be said to be currently dangerous." *Id.* at 78. Therefore, when an offender has been released into the community, due process is violated if the state has not demonstrated that the offender is currently dangerous, and the offender's current dangerousness must be demonstrated by a recent overt act. *Id.* at 76 (citing *Young,* 857 P.2d at 41–42). The Washington court stated: "The existence of a recent overt act . . . necessarily satisfies the dangerousness element required by due process [because] the recent overt act requirement directly and specifically speaks to a person's dangerousness." *Id.* at 78.

¶ 23. We decline to adopt *Albrecht.* Bush's argument, rooted in the *Albrecht* rationale, raises three problems. First, Bush's entire due process argument assumes that the mere fact that an offender has been granted parole constitutes a determination that the offender is no longer dangerous. Second, Bush asks this court to adopt an absolute, bright-line rule that specifies the particular evidence that will adequately show current dangerousness, limiting the factfinder's ability to determine the offender's current level of dangerousness. Third, Bush advocates an illogical standard by urging that this court require proof of a "recent overt act" while defining "recent" as the period of time when the offender is in the community, regardless of the passage of time between the parole revocation and the filing of the involuntary civil commitment petition. We discuss each issue in turn.

██

¶ 24. At the outset, Bush's entire argument rests on the assumption that the parole board must have determined that Bush was no longer dangerous when it granted him parole in 1992. Bush asserts that the parole board would not have released him into the community on supervised parole if the board believed he was dangerous. Once the State presumably determined that Bush was no longer dangerous and released him into the community, Bush reasons, due process requires the State prove he had become dangerous subsequent to his release by showing a recent overt act.

¶ 25. The State contends that this rationale is unpersuasive because nothing in the record demonstrates why Bush was released on supervised parole.

¶ 26. As both parties correctly observe, the record is terse as to why Bush was paroled or on what basis that decision was made. In fact, the evidence contained in the record could lead to contradictory conclusions as to the parole board's rationale. On one hand, the record indicates that prior to his 1992 parole, Bush had made "excellent" progress with his sex-offender treatment, had become a "low risk to society," and was "not dangerous to others." This evidence may have led to the conclusion that Bush was no longer dangerous.

¶ 27. On the other hand, Bush was allowed to leave prison on supervised release in order to attend the Behavioral Medicine Institute of Atlanta, Georgia. According to the record, the Atlanta program is an advanced sex-offender treatment program that "treats the most chronic of cases and those that have proven unresponsive to previous treatments." In addition, the State imposed specific conditions of release upon Bush.

As such, evidence in the record also supports a determination that Bush remained dangerous.

¶ 28. Therefore, we cannot conclude that the mere fact that the State granted Bush parole necessarily leads to the conclusion that he was no longer dangerous as that concept is used in chapter 980. The record is simply too barren for us to agree with that conclusion. Although the fact that the State placed Bush on supervised parole has probative value in undercutting the State's case, it is not a conclusive determination of Bush's dangerousness under chapter 980.

B

¶ 29. Bush advocates that we adopt a bright-line rule that requires a showing that he committed a recent overt act while on parole, regardless of any of his sexually violent behavior before, or after, the period of time he was on supervised parole in 1992. We agree with the State that due process does not require adoption of this bright-line rule.

¶ 30. We recognize that substantive as well as procedural limitations on a state's power to commit the dangerously mentally ill vary from jurisdiction to jurisdiction. *Post,* 197 Wis. 2d at 312 (citing *Jackson v. Indiana,* 406 U.S. 715, 736–37 (1972)). As such, the United States Supreme Court has refused to proscribe strict boundaries for legislative determinations of what is necessary for voluntary commitment. *Id.*

¶ 31. Moreover, the Court has cautioned that "an absolutist approach is unworkable" in a civil commitment analysis. *Kansas v. Crane,* 534 U.S. 407, 411

109

(2002). The Court concluded that "the Constitution's safeguards of human liberty in the area of mental illness and the law are not always best enforced through precise bright-line rules." *Crane* 534 U.S. at 413 (citing *Kansas v. Hendricks,* 521 U.S. 346, 359 (1997)). Bright-line rules present unworkable standards because their rigidity hampers the factfinder's ability to measure an individual's dangerousness. *See State v. Laxton,* 2002 WI 82, ¶ 21, 254 Wis. 2d 185, 647 N.W.2d 784.

¶ 32. Along similar lines, inhibiting a factfinder's evaluation of dangerousness through bright-line rules is problematic because chapter 980 is reserved for only the most dangerous offenders. *See Post,* 197 Wis. 2d at 307. Prior to commitment, chapter 980 requires the State to present evidence sufficient to allow the factfinder to distinguish "a dangerous sexual offender who has serious difficulty controlling his or her behavior from a dangerous but typical recidivist." *Laxton,* 245 Wis. 2d 185, ¶ 23. This evaluation is not an exact science; the standard "risk assessment" used by expert witnesses for sexual offenders "takes into account all past violations of the law in attempting to evaluate the probability of future sexually assaultive behavior." *State v. Franklin,* 2004 WI 38, ¶ 22, 270 Wis. 2d 271, 677 N.W.2d 276.

¶ 33. Predicting an offender's dangerousness under chapter 980 is a complex evaluation. At trial, the factfinder is obligated to examine the totality of the offender's past actions and make a determination based on the offender's "relevant character traits and patterns of behavior," as to whether the offender's mental condition currently predisposes him or her to commit another sexually violent act. *Id.,* ¶ 14 (holding that Wis.

Stat. § 904.04(2) did not apply to chapter 980); *State v. Kienitz*, 227 Wis. 2d 423, 441, 597 N.W.2d 712 (1999) (reasoning that the factfinder has an obligation to weigh all the evidence presented). Ultimately, the question "is simply whether it is substantially probable that the person will engage in acts of sexual violence without regard to any specific restrictions, supervision or time frame." *See State v. Thiel*, 2004 WI App 140, ¶ 17, 275 Wis. 2d 421, 685 N.W.2d 890. Thus, we agree with the State that due process does not require that an evaluation of dangerousness be limited based on Bush's proposed bright-line rule.

## C

¶ 34. Finally, we agree with the State that Bush advocates an illogical application of requiring recent overt acts to prove current dangerousness. Bush defines recent overt acts as including acts during the time he was on parole, which in this case was five years before the State filed the initial petition. His rationale is again based on *Albrecht,* where the Washington court found that to determine the offender's level of current dangerousness, the factfinder must rely on an offender's behavior when he or she is not incarcerated. *Albrecht,* 51 P.3d at 77. When an individual is continuously incarcerated, the only behavior available to the factfinder is his or her behavior prior to incarceration. *Id.* But, under *Albrecht,* when the offender has been released back into the community, his or her behavior upon release is demonstrative of whether the offender continues to be dangerous. *Id.*

¶ 35. Looking to Bush's time on parole, without more, does not necessarily give the factfinder an adequate evaluation of Bush's current dangerousness for at least three reasons.

¶ 36. First, Bush's parole was not close in time to his chapter 980 trial. Bush was released into the community under supervised parole in early 1992. In less than a month, he violated specific conditions of his parole and was reincarcerated for his 1988 offense. Five years later, the State filed a petition to commit Bush under chapter 980. Bush asks this court to conclude that his behavior while on parole in 1992 should be the only reliable evidence for the factfinder to use in determining whether he was currently dangerous in 1997. His conduct during his parole merely establishes that he had difficulty in conforming his behavior to the law during his short release period.

¶ 37. Second, under Bush's approach, an offender's behavior while incarcerated would be irrelevant to support a determination of current dangerousness. However, the factfinder's analysis of an offender's current dangerousness is not limited to the offender's actions prior to his or her most recent incarceration and can include an offender's actions while incarcerated. *See Franklin*, 270 Wis. 2d 271, ¶ 22; *State v. Zanelli*, 212 Wis. 2d 358, 379–80, 569 N.W.2d 301 (Ct. App. 1997). Here, Bush has engaged in the following behavior while incarcerated: he was reprimanded for corresponding with a person who was "grooming a boy for sexual purposes," and he attempted to obtain pornographic materials. This behavior may bear on Bush's dangerousness, but the weight to be given to this behavior is for the factfinder.

112

¶ 38. Third, the sexually violent offense for which Bush is incarcerated may be relevant evidence of current dangerousness. Bush was eligible for a chapter 980 commitment only because he had been convicted of a sex-related crime. The fact that Bush was incarcerated for attempted sexual assault when the chapter 980 petition was filed is evidence of his dangerousness at that time. Although this conviction, on its face, "is not sufficient to establish beyond a reasonable doubt that the person has a mental disorder [as required for a chapter 980 commitment]," Wis. Stat. § 980.05(4),[11] we conclude that evidence of Bush's 1988 conviction is a proper component of the evaluation of his current dangerousness.

¶ 39. Therefore, we conclude that due process does not require a showing of a recent overt act to prove current dangerousness when there has been a break in the offender's incarceration and the offender has been reincarcerated for nonsexual behavior. Because due process does not require this showing under these circumstances, we agree with the State that chapter 980 is accordingly narrowly tailored to serve a compelling state interest for purposes of Bush's challenge. Therefore, we reject Bush's argument that chapter 980 is facially unconstitutional on that basis.

---

[11] *See Kansas v. Crane,* 534 U.S. 407, 412 (2002) (emphasizing the constitutional importance of the distinction between those who are dangerous sexual offenders and those more properly dealt with exclusively through criminal law. "That distinction is necessary lest 'civil commitment' become a 'mechanism for retribution or general deterrence'—functions properly those of criminal law, not civil commitment.").

## V

¶ 40. In sum, we conclude that chapter 980 is not facially unconstitutional. We conclude that due process does not require proof of a recent overt act in evaluating the dangerousness of the offender when there has been a break in the offender's incarceration and the offender is reincarcerated for nonsexual behavior. Substantive due process allows for a chapter 980 commitment when there is sufficient evidence of current dangerousness. We decline to adopt any bright-line rule that requires current dangerousness to be proven by a particular type of evidence.

*By the Court.*—The decision of the court of appeals is affirmed.