IN RE the COMMITMENT OF Steven C. FELDMANN:

STATE of Wisconsin, Petitioner-Respondent,

v.

Steven C. FELDMANN, Respondent-Appellant.†

Court of Appeals

*No. 2005AP2347. Submitted on briefs January 26, 2007.
—Decided February 21, 2007.*

2007 WI App 35

(Also reported in 730 N.W.2d 440.)

† Petition to review denied 5/22/07.

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Jefren E. Olsen*, assistant state public defender of Madison.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Maura FJ Whelan*, assistant attorney general, and *Peggy A. Lautenschlager*, attorney general.

Before Snyder, P.J., Brown and Anderson, JJ.

¶ 1. SNYDER, P.J. Steven C. Feldmann appeals from a judgment and order for commitment as a sexually violent person under WIS. STAT. ch. 980 (2005–06)[1] and from an order denying his motion for postcommitment relief. He contends that the circuit court violated his right to equal protection when it confined him under chapter 980 without proof of a recent overt act of sexual violence. We disagree and affirm the judgment and orders of the circuit court.

---

[1] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise stated.

## BACKGROUND

¶ 2.   Feldmann was convicted of two counts of second-degree sexual assault of a child in 1995 and was sentenced to two consecutive five-year prison terms. As Feldmann's parole release date approached, the Department of Corrections conducted a Special Purpose Evaluation to determine whether he met the criteria for commitment under Wis. Stat. ch. 980. The evaluator concluded that Feldmann was not eligible for commitment and Feldmann was released on parole as of January 22, 2002.

¶ 3.   During a maintenance polygraph examination, Feldmann's parole agent discovered that Feldmann had violated some of his parole conditions. Based on those violations, the agent placed Feldmann on parole hold. The agent then went to the jail to interview Feldmann and take his statement. The agent determined that Feldmann's violations included possession of sexually explicit materials, possession and consumption of alcoholic beverages, visits to an adult video store and trips to a swimming area known as a "hangout for youth in the area." Feldmann's parole was revoked and he was returned to prison on March 10, 2003, for a term of one year. His new mandatory release date was January 29, 2004.

¶ 4.   On January 26, 2004, the State petitioned for an order to detain Feldmann as a "sexually violent person" within the meaning of Wis. Stat. § 980.01(7). A probable cause hearing took place on January 28 and the circuit court concluded that Feldmann was "a danger to others because of [his] mental disorder" and was "more likely than not to commit an act of sexual violence" if released.

477

¶ 5. Feldmann moved to dismiss the petition on grounds that the State could not prove he had engaged in a recent overt act showing dangerousness and that WIS. STAT. ch. 980 is unconstitutional because it violated his right to substantive due process. The circuit court denied Feldmann's motion. A jury trial ensued and two psychologists testified that Feldmann suffered from at least one mental disorder that predisposed him to commit sexually violent acts. Feldmann also testified at trial on his own behalf. Ultimately, the jury concluded that Feldmann was a sexually violent person as alleged in the petition. The circuit court entered judgment accordingly and ordered Feldmann committed to the Department of Health and Family Services under chapter 980.

¶ 6. Feldmann filed a postcommitment motion arguing that commitment under WIS. STAT. ch. 980 without proof of a recent overt act violated his right to equal protection. The circuit court denied the motion and Feldmann appeals.

## DISCUSSION

¶ 7. Feldmann contends that WIS. STAT. ch. 980 violates his right to equal protection under the law.[2] Specifically, he argues that he was treated differently under chapter 980 than a similarly situated person would have been under WIS. STAT. ch. 51, the Mental Health Act. Feldmann emphasizes that, in mental

---

[2] Feldmann challenges the constitutionality of WIS. STAT ch. 980 as applied to him. *See State v. Joseph E.G.,* 2001 WI App 29, ¶ 5, 240 Wis. 2d 481, 623 N.W.2d 137 (there are two major types of constitutional challenges: "facial" challenges and "as-applied" challenges). Equal protection is guaranteed by both the federal and Wisconsin constitutions. U.S. CONST. amend. XIV, § 1; WIS. CONST. art. I, § 1.

health commitment under chapter 51, the petitioner must establish a recent act or omission to show dangerousness under WIS. STAT. § 51.20(1)(a)2.a.-e. In contrast, chapter 980, which controls sexually violent person commitments, does not require a petitioner to establish a recent act as proof of dangerousness.

¶ 8. The guarantee of equal protection is implicated when the statutes provide for different treatment of persons who are "similarly situated." *See Wisconsin Prof'l Police Ass'n v. Lightbourn*, 2001 WI 59, ¶ 221, 243 Wis. 2d 512, 627 N.W.2d 807. Persons committed under WIS. STAT. chs. 51 and 980 are similarly situated for purposes of the equal protection guarantee. *See State v. Post*, 197 Wis. 2d 279, 318–19, 541 N.W.2d 115 (1995). There is a presumption of constitutionality for statutes and every presumption favoring validity must be indulged. *State v. Randall*, 192 Wis. 2d 800, 824, 532 N.W.2d 94 (1995). The constitutionality of a statute is a question of law that this court reviews de novo. *Post*, 197 Wis. 2d at 301. Feldmann bears the burden to prove, beyond a reasonable doubt, that chapter 980 is unconstitutional as applied to him. *See Post*, 197 Wis. 2d at 301.

¶ 9. Before embarking upon our analysis, we must address the proper level of judicial scrutiny. Strict scrutiny is proper where classifications are based on a suspect class, such as alienage or race, or where classifications arbitrarily deprive one class of persons, but not another, of a fundamental right. *See id.* at 319. Here, Feldmann defines the relevant classification as "persons who have been in the community and are then subject to commitment" and advocates strict scrutiny because his "right to liberty is impeded." The State

acknowledges that strict scrutiny is "arguably the correct choice because the deprivation of a person's liberty, a fundamental right, is at issue." Under strict scrutiny, disparate treatment must further a compelling governmental interest to be found constitutional. *Id.* We need not address lesser levels of scrutiny because WIS. STAT. ch. 980 survives Feldmann's challenge even under the strictest level of scrutiny. The legislation exists "to further the compelling governmental purpose of protection of the public." *Post,* 197 Wis. 2d at 322–23.

¶ 10. We turn to the requirements of the relevant statutes. Both require a petitioner to demonstrate that the person to be committed is dangerous. Under WIS. STAT. § 980.02, the petitioner must demonstrate that the person has a mental disorder and is dangerous because the mental disorder creates a substantial probability that he or she will commit acts of sexual violence. *See* § 980.02(2)(b) and (c). Under WIS. STAT. § 51.20, the petitioner must demonstrate any of a number of recent acts or omissions, including but not limited to: recent threats or attempts at suicide or serious bodily harm, recent homicidal or other violent behavior, or recent acts or omissions demonstrating an inability to meet basic needs. *See* § 51.20(1)(a)2. We recognize that dangerousness is defined differently by each statute; however, our supreme court long ago concluded that "the lack of a recent overt act under chapter 980 in no way violates equal protection." *See Post,* 197 Wis. 2d at 324.

¶ 11. Nonetheless, Feldmann emphasizes that no published opinion addresses the specific situation presented here. His argument rests on the fact that in 2002 he was released to the community upon a finding that he was ineligible for commitment. If he was not dangerous in 2002, he argues, the State should have to show some recent overt act to justify his commitment.

480

¶ 12.  Feldmann directs us to a case from Washington State, where the sexually violent person commitment statute was interpreted to require proof of a recent overt act when the person has been released from confinement and into the community after a conviction. *See In re Albrecht,* 51 P.3d 73, 77–78 (Wash. 2002). Feldmann acknowledges, however, that our supreme court expressly rejected the holding in *Albrecht. See State v. Bush,* 2005 WI 103, ¶ 23, 283 Wis. 2d 90, 699 N.W.2d 80, *cert. denied,* 126 S. Ct. 631 (2005).

¶ 13.  In *Bush,* the court considered a substantive due process challenge to WIS. STAT. ch. 980 on grounds the statute failed to require a showing of a recent overt act to prove current dangerousness where there had been a break in his incarceration and he had been reincarcerated for nonsexual behavior. *Bush,* 283 Wis. 2d 90, ¶ 21. Like Feldmann, Bush focused on his release into the community to support his arguments. Though *Bush* addressed due process rather than equal protection, the analysis is instructive. The court stated:

> Predicting an offender's dangerousness under chapter 980 is a complex evaluation. At trial, the factfinder is obligated to examine the totality of the offender's past actions and make a determination based on the offender's "relevant character traits and patterns of behavior," as to whether the offender's mental condition *currently predisposes him or her to commit another sexually violent act.*

*Bush,* 283 Wis. 2d 90, ¶ 33 (emphasis added).

¶ 14.  Furthermore, the supreme court has specifically addressed the varying standards of dangerousness within the analytical framework of equal protection as follows:

> Various mental conditions may receive different statutory treatment depending on the state's underlying

interest in the commitment. The statutory criteria of dangerousness sufficient to support involuntary commitments already varies widely. For example, a protective placement under [Wis. Stat. ch.] 55 does not require a recent overt act but merely that the person's condition "create a substantial risk of serious harm to oneself or others." Wis. Stat. § 51.06(2)(c). Even under [Wis. Stat. ch.] 51, if the subject of a petition for commitment is an inmate of a state prison or the subject of inpatient treatment in a mental hospital, a recent overt act is not necessary. Wis. Stat. §§ 51.20(1)(am) and (ar). The legislature defines dangerousness in [Wis. Stat. ch.] 980 on the basis of a current diagnosis of a mental disorder that has the effect of creating a substantial probability that the subject of the petition will engage in acts of sexual violence.

*Post*, 197 Wis. 2d at 324. The court found that the lack of a recent overt act under chapter 980 in no way violated equal protection. *Post*, 197 Wis. 2d at 324

¶ 15. Feldmann also argues the "heightened level of dangerousness" ascribed to those who have already engaged in a concrete act of sexual violence "can no longer be presumed." *See id.* at 322.[3] He asserts that his release into the community has rebutted the legislative presumption that he presents a heightened level of dangerousness.

---

[3] The *Post* court stated:

The legislature has determined that, as a class, persons predisposed to sexual violence are more likely to pose a higher level of danger to the community than do other classes of mentally ill or mentally disabled persons. This heightened level of dangerousness and the unique treatment needs of sexually violent persons justify distinct legislative approaches to further the compelling governmental purpose of protection of the public.

*State v. Post*, 197 Wis. 2d 279, 322–23, 541 N.W.2d 115 (1995). This language provides the foundation for Feldmann's rebuttable presumption argument. However, this is part of the court's

¶ 16. The State correctly points out, however, that neither the case law nor the statutes set forth any presumption that a person facing WIS. STAT. ch. 980 commitment is dangerous. Rather, the State must prove the person's dangerousness through expert testimony, examination of the person's past acts and behavioral patterns, and evidence of relevant character traits before commitment will occur. *See Bush*, 283 Wis. 2d 90, ¶¶ 32–33. "The legislature defines dangerousness in chapter 980 on the basis of a current diagnosis of a mental disorder that has the effect of creating a substantial probability that the subject of the petition will engage in acts of sexual violence." *Post*, 197 Wis. 2d at 324.

¶ 17. It is important to remember that WIS. STAT. ch. 980 applies only to a person who has committed a sexually violent offense. This threshold requirement is not present in WIS. STAT. ch. 51. The different dangerousness standards reflect this distinction. Here, the jury was informed of Feldmann's two sexual assault convictions and the conduct underlying those convictions. They heard testimony from Feldmann's parole agent about his rule violations while in the community. Furthermore, two psychologists offered expert opinions that Feldmann suffered from a current mental disorder that created a substantial probability that he would engage in acts of sexual violence in the future.

¶ 18. Feldmann testified on his own behalf and his mother testified as well. Feldmann took the opportunity at closing to argue that none of his behavior, aside from the conduct underlying one of his original convictions, involved any physical contact with a victim.

discussion of judicial scrutiny analysis. It does not purport to create or recognize a presumption of dangerousness.

He explained that his primary mental disorder, "exhibitionism," is not a condition that affects his capacity to commit sexually violent acts. Feldmann emphasized that he had been released into the community in 2002 on the recommendation of one of the experts who subsequently changed her opinion after his revocation. In summary, Feldmann had every opportunity to challenge the State's proof. His release into the community was but one factor the jury had to weigh in its assessment of dangerousness.

¶ 19. In accordance with *Post*, holding that WIS. STAT. ch. 980's lack of a recent overt act requirement does not violate equal protection, and *Bush*, holding that chapter 980 does not violate substantive due process even where the subject of the petition has been released into the community, together with our application of the statute to the record facts, we hold that no equal protection violation has occurred.

### CONCLUSION

¶ 20. The dangerousness requirement in WIS. STAT. ch. 980 is designed to protect the public from future acts of sexual violence. The State has the burden to prove dangerousness under chapter 980 whether the subject of the petition has been continuously incarcerated or has been previously released into the community. The person objecting to commitment is entitled to challenge the petition with all of the facts and evidence at his or her disposal. Equal protection guarantees are not compromised in this scheme. Accordingly, we affirm the judgment and orders of the circuit court.

*By the Court.*—Judgment and orders affirmed.