SHIRLEY S. ABRAHAMSON, C.J.
¶ 62. {concurring). I join the majority opinion.[1] I write briefly regarding the impact of State v. Bush, 2005 WI 103, 283 Wis. 2d 90, 699 N.W.2d 80, on waiver, forfeiture, and subject matter jurisdiction.
*306 ¶ 63. The court held in Bush that "a facial challenge is a matter of subject matter jurisdiction and cannot be waived." 283 Wis. 2d 90, ¶ 17 (emphasis added).
¶ 64. After Bush, we clarified the difference between the concepts of "forfeiture" and "waiver." These concepts had become confused in our jurisprudence. In State v. Ndina, 2009 WI 21, 315 Wis. 2d 653, 761 N.W.2d 612, we distinguished between rights that receive a "forfeiture" standard and rights that receive a "waiver" standard:
[S]ome rights are forfeited when they are not claimed at trial; a mere failure to object constitutes a forfeiture of the right on appellate review.... In contrast, some rights are not lost by a counsel's or a litigant's mere failure to register an objection at trial. These rights are so important to a fair trial that courts have stated that the right is not lost unless the defendant knowingly relinquishes the right.
Id., ¶¶ 30-31.
¶ 65. Because Bush predated Ndina, we are left to ask (1) whether Bush referred to a facial challenge to the constitutionality of a statute as a right subject to a waiver standard or a forfeiture standard; and (2) whether Mary F.-R.'s facial equal protection challenge *307 to the jury statute is subject to a waiver standard or a forfeiture standard. The court leaves both questions unanswered in the instant case.[2]
¶ 66. It is also unclear whether Mary F.-R.'s facial challenge to a six-person non-unanimous jury attacked the circuit court's subject matter jurisdiction or its competence or neither. Bush plainly asserts that "a facial challenge is a matter of subject matter jurisdiction and cannot be waived." But as this court noted in Bush, "the jurisprudence concerning subject matter jurisdiction and a circuit court's competence to exercise its subject matter jurisdiction is murky at best."[3] This question about facial challenges, subject matter jurisdiction, and competence is also left for another day.
¶ 67. Is the size and the unanimity of the jury a procedural matter or a substantive one? This court has declared that trial by jury is a substantive right, stating that "[t]he legislature may modify old procedures, or create new ones, if the substantive right to jury trial is preserved."[4] The United States Supreme Court and this court have linked the number of jurors and jury unanimity directly to the substantive right of trial by jury, rather than viewing them as mere procedural features.[5]
¶ 68. For the stated reasons, I concur.

 The court has declared that deprivations of liberty in Chapter 51 and Chapter 980 proceedings require at least some jury protection on equal protection grounds. State v. Post, 197 Wis. 2d 279, 541 N.W.2d 115 (1995).
Although I agree that case law supports a holding that a six-person non-unanimous jury did not violate Mary F.-R.'s equal protection rights, I am troubled by the due process implications of the case and whether unanimity and the size of the jury are essential attributes of the right to jury trial. These issues were not briefed.
The United States Supreme Court has noted that "civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." Addington v. Texas, 441 U.S. 418, 425 (1979). The Court has held that a non-unanimous six-person jury violates the Sixth Amendment right to trial by a jury in criminal cases. See Burch v. Louisiana, 441 U.S. 130, 99 S. Ct. 1623 (1979); Ballew v. Georgia, 435 U.S. 223, 98 S. Ct. 1029 (1978) (holding that a unanimous five-person jury was an unconstitutional deprivation of a jury trial in a criminal case).
Similarly, our court has held that in criminal trials, the Wisconsin Constitution requires a 12-person jury. State v. Hansford, 219 Wis. 2d 226, 580 N.W.2d 171 (1998).
Although both Chapter 51 and Chapter 980 commitment hearings are civil proceedings, not criminal proceedings, at common law a civil trial afforded parties a 12-person jury. See Hansford, 219 Wis. 2d at 238 ("[R]ight to a trial by jury guaranteed by the Wisconsin Constitution is the right to a jury of 12 persons as recognized by the common law as it existed at the time the constitution was adopted . . ..") (citing Norval v. Rice, 2 Wis. 17, 20-23 (1853)); see generally Richard S. Arnold, Trial by Jury: The Constitutional Right to a Jury of Twelve in *306 Civil Trials, 22 Hofstra L. Rev. 1 (1993) (describing the voluminous historical evidence that the common law in England and the United States viewed a jury as being composed of twelve).
I am concerned that a non-unanimous six-person jury in civil commitments constituting a significant deprivation of liberty may be a violation of due process and a violation of a right to jury trial. Lines must be drawn somewhere on the size of the jury and the number of jurors required to agree on a verdict in a case of significant deprivation of liberty, if the substance of the jury trial right is to be preserved.

 Although Mary F.-R. did not make a contemporaneous objection when a six-person jury was selected, she had previously asked several times for a 12-person jury. It is therefore arguable that she neither waived nor forfeited her objection to a six-person jury.

 Bush, 283 Wis. 2d 90, ¶ 16.

 State ex rel. Strykowski v. Wilkie, 81 Wis. 2d 491, 523, 261 N.W.2d 434 (1978).

 See Burch v. Louisiana, 441 U.S. 130, 99 S. Ct. 1623 (1979); Ballew v. Georgia, 435 U.S. 223, 98 S. Ct. 1029 (1978); State v. Hansford, 219 Wis. 2d 226, 580 N.W.2d 171 (1998).