In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 23-2303

DALE PESHEK and BRIAN THRELKELD,

*Plaintiffs-Appellants*,

*v.*

KIRSTEN JOHNSON, Secretary of the Wisconsin Department of
Health Services,

*Defendant-Appellee*.

_____

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 2:21-cv-01061-PP — **Pamela Pepper**, *Chief Judge*.

_____

ARGUED APRIL 18, 2024 — DECIDED AUGUST 5, 2024

_____

Before SYKES, *Chief Judge,* BRENNAN, and SCUDDER, *Circuit Judges*.

SCUDDER, *Circuit Judge*. After Brian Threlkeld served a prison sentence for sexually assaulting a minor, the State of Wisconsin civilly committed him as a sexually violent person in 2008. Eleven years later, in 2020, the State agreed that Threlkeld was eligible for supervised release subject to the identification of suitable housing (for example, a residence

not too close to schools and parks) within Kenosha County, his former county of residence. But to date Kenosha County— the entity charged by the Wisconsin State Legislature with identifying an appropriate residential option—has not been able to do so, leaving Threlkeld civilly committed. Tired of waiting and convinced that the State's housing criteria are too restrictive to ever be met within a county as populated as Kenosha, Threlkeld brought this suit in federal court, alleging a violation of his rights under the Fourteenth Amendment to the U.S. Constitution. Naming Wisconsin's Secretary of Health Services as the sole defendant, Threlkeld sought to enjoin enforcement of the State's supervised release housing criteria in chapter 980.08 of the Wisconsin Statutes.

The district court emphasized that Threlkeld brought the federal action at a time when proceedings remained ongoing in the Kenosha County Circuit Court to identify a suitable housing arrangement. To avoid interfering with those proceedings, the district court abstained from exercising jurisdiction under *Younger v. Harris*, 401 U.S. 37 (1971). While the district court's analysis has much to say for itself, we see a more basic and fatal flaw with Threlkeld's federal claim: the defendant he sued, the Secretary of the Department of Health Services, cannot provide him with the relief he seeks. So we affirm the dismissal of Threlkeld's federal action.

## I

### A

Everything began for Brian Threlkeld in 2000, when a Wisconsin jury convicted him of sexually assaulting his 14-year-old half-brother. The Kenosha County Circuit Court sentenced him to 10 years' imprisonment. Threlkeld was released

on parole in 2005. Two years later, he violated the terms of release and, after being reincarcerated, sexually assaulted his half-brother yet again inside—of all places—the Racine Correctional Institution. All of this led the Wisconsin Attorney General in 2008 to petition the Kenosha County Circuit Court to civilly commit Threlkeld as a sexually violent person under chapter 980. See Wis. Stat. § 980.02. The ensuing jury trial ended in a finding that the state had met its burden of proving beyond a reasonable doubt that Threlkeld was a sexually violent person. See *id.* at § 980.05(5). The court ordered Threlkeld's civil commitment at the Sand Ridge Secure Treatment Center, where he has remained for the last 16 years.

In February 2020 the Kenosha County Circuit Court determined that Threlkeld was eligible for supervised release subject to the identification of suitable housing under the standards prescribed by Wis. Stat. § 980.08. That provision authorizes supervised release only when the county of the committed person's residence identifies a housing option "not less than 1,500 feet from any school premises, child care facility, public park, place of worship, or youth center" and not "adjacent to a property where a child's primary residence exists," among other criteria. Wis. Stat. § 980.08(4)(dm)(1). With Threlkeld's county of residence being Kenosha, the Kenosha County Circuit Court has the final discretion to approve any proposed housing option. See *id.* at § 980.08(4)(g).

Kenosha County identified compliant housing in the Village of Trevor more than twelve months after the court agreed that Threlkeld was eligible for supervised release. But a week before Threlkeld's scheduled release, the Village notified the local sheriff that there was a park within 1,300 feet of the proposed home. This finding led the Kenosha County Circuit

Court in May 2021 both to declare the proposed housing arrangement non-compliant with Wis. Stat. § 980.08 and to order the preparation of a new supervised release plan. See *id.* at § 980.08(4)(g).

Meanwhile, in February 2022, and undoubtedly frustrated by remaining civilly committed a year after being approved for supervised release, Threlkeld went on the offensive. It was then that he petitioned the Kenosha County Circuit Court to discharge his ongoing civil commitment. See Wis. Stat. § 980.09. That petition triggered a trial, which concluded with the state judge finding that Threlkeld remained a sexually violent person—a decision recently affirmed on appeal. See *In re Commitment of Threlkeld*, No. 2023AP487, 2024 WL 3168896 (Wis. Ct. App. June 26, 2024); see also Wis. Stat. § 980.09(1).

Four years have now passed since the Kenosha County Circuit Court found Threlkeld conditionally suitable for supervised release. Efforts remain ongoing to identify compliant housing while Threlkeld's petition for supervised release remains on the Kenosha court's docket. Indeed, the court entered a treatment progress reevaluation report under Wis. Stat. § 980.07 in April 2024.

For today, though, Threlkeld remains civilly committed at Sand Ridge.

B

In September 2021, Threlkeld joined Dale Peshek and Hung Tran—who, at that time, were also civilly committed at Sand Ridge—bringing a class action complaint in federal court against the Wisconsin Secretary of Health Services (presently Kristen Johnson) under 42 U.S.C. § 1983. The complaint alleged violations of the Due Process and Equal

Protection Clauses of the Fourteenth Amendment and urged the district court to declare unconstitutional and enjoin enforcement of the civil commitment statute's supervised release residency conditions in Wis. Stat. § 980.08. More specifically, Threlkeld, Peshek, and Tran alleged that the identification of compliant housing is all but impossible in densely populated counties (like Milwaukee, Dane, Kenosha, and others), as all potential options have proven to be too close to schools, parks, and other locations frequented by children. This circumstance, the complaint continues, risks indefinite civil commitment—a reality not allowed by the Fourteenth Amendment.

The district court recognized the gravity of the allegations while also observing that proceedings remained ongoing in Wisconsin courts to identify compliant supervised release housing arrangements for Threlkeld, Peshek, and Tran. Those proceedings—and the underlying efforts by county officials to identify housing options—led the district court to abstain from exercising federal jurisdiction under *Younger v. Harris*, 401 U.S. 37 (1971).

Rooted in principles of comity and federalism, *Younger* abstention is an exception to the general rule that federal courts must hear cases properly within its jurisdiction. A federal court may not abstain or otherwise decline to exercise jurisdiction "simply because a pending state-court proceeding involves the same subject matter." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013). Indeed, only under three "exceptional circumstances" may federal courts decline to "decide a case in deference to the States": in ongoing state criminal prosecutions, in certain "civil enforcement proceedings," and in "pending civil proceedings involving certain orders …

uniquely in furtherance of the state courts' ability to perform their judicial functions." *Id.* at 78 (citing *New Orleans Public Service, Inc. v. Council of the City of New Orleans*, 491 U.S. 350, 368 (1989)).

The district court determined that the broad federal constitutional challenge leveled by Threlkeld, Peshek, and Tran at Wis. Stat. § 980.08 fell within an exceptional circumstance category. It reasoned that the ongoing chapter 980 proceedings were civil enforcement proceedings, making abstention warranted to avoid unduly interfering with the efforts of state and county officials to identify compliant housing.

Threlkeld and Peshek now appeal as the only remaining plaintiffs in the federal action. Tran petitioned for and received a discharge from civil commitment leading to release before this appeal was filed. And while this litigation was pending, Peshek likewise received a discharge from civil commitment. Peshek's release thereby moots his federal claims, and by extension, his appeal. See *DeFunis v. Odegaard*, 416 U.S. 312, 319–20 (1974) (holding that claim is moot where the plaintiff receives the requested relief before the litigation of the claim is complete).

## II

What most troubled the district court concerns us too. In choosing to abstain from exercising jurisdiction under *Younger*, the district court emphasized that proceedings regarding Brian Threlkeld's supervised release remain pending in the Kenosha County Circuit Court, with the County itself continuing to try to identify a compliant housing option—all pursuant to the process and parameters prescribed by Wis. Stat. § 980.08. In these circumstances, the district court chose

to abstain under *Younger* to avoid interfering with efforts to resolve what everyone agrees is a most challenging circumstance—trying to find placement for Threlkeld on supervised release that is both safe to the community and provides him with the transition resources necessary to one day result in his discharge from Wisconsin's civil commitment program. See *Howe v. Hughes*, 74 F.4th 849, 851 (7th Cir. 2023).

We devoted a substantial portion of oral argument to sounding identical concerns, including by asking why Threlkeld has not raised the exact same constitutional claims he presses in federal court in either ongoing chapter 980 proceedings or in a collateral proceeding in the Kenosha County Circuit Court. We see no reason—and no barrier in Wisconsin law—to his doing so. Indeed, the North Western Reporter contains scores of decisions in which Wisconsin courts have considered and resolved a range of constitutional challenges to one or another dimension of chapter 980's civil commitment of sexually violent persons. See, *e.g.*, *In re Commitment of Feldmann*, 730 N.W.2d 440 (Wis. 2007) (reviewing equal protection and due process challenges); *In re Commitment of Beyer*, 707 N.W.2d 509 (Wis. 2006) (reviewing a due process challenge to a committed person's detention over twenty-two months after deemed eligible for release); *In re Commitment of Bush*, 699 N.W.2d 80 (Wis. 2005) (reviewing a due process challenge); *In re Commitment of Burris*, 682 N.W.2d 812 (Wis. 2004) (same); *State v. Carpenter*, 541 N.W.2d 105 (Wis. 1995) (reviewing equal protection, due process, double jeopardy, and *ex post facto* challenges); *In re Commitment of Curiel*, 597 N.W.2d 697 (Wis. 1999) (reviewing equal protection and vagueness challenges); *State v. Post*, 541 N.W.2d 115 (Wis. 1995) (reviewing substantive due process and equal protection challenges). Time and again, chapter 980 has withstood

constitutional challenges. See *In re Commitment of Schulpius*, 678 N.W.2d 369, 383 (Wis. Ct. App. 2004) (collecting cases).

We are aware of nothing in Wisconsin law that prevents Threlkeld from pressing the exact constitutional challenge featured in his federal complaint in his ongoing chapter 980 proceedings—an observation the Secretary's counsel affirmatively agreed with at oral argument. To put the point in positive terms, we have every reason to believe the Kenosha County Court will treat Threlkeld's claim with the gravity it deserves, for the State enters very delicate constitutional territory by continuing to civilly detain someone determined many years ago to be suitable for conditional release. See *Howe*, 74 F.4th at 853 (canvassing the Supreme Court's civil commitment jurisprudence and explaining that "[i]ndefinite civil commitment with no meaningful treatment and no realistic possibility of release violates the constitutional command that 'the nature of commitment [must] bear some reasonable relation to the purpose for which the individual is committed'" (quoting *Foucha v. Louisiana*, 504 U.S. 71, 79 (1992))).

For his part, Threlkeld sees *Younger* as a misfit and urges us to reinstate his federal complaint. In pressing this point, he focuses exclusively on the fact that his chapter 980 proceedings are now in the supervised release phase—a stage he sees as almost entirely civil and entirely distinct from the 2009 determination that he is a sexually violent person. This distinction is meaningful, Threlkeld tells us, because his ongoing supervised release proceedings do not amount to an exceptional circumstance justifying *Younger* abstention, even though original civil commitment proceedings would. See *Sweeney v. Bartow*, 612 F.3d 571, 573 (7th Cir. 2010).

We are skeptical of the distinction Threlkeld invites us to draw and read *Sweeney* as more broadly concluding that chapter 980 proceedings are a kind of state civil proceeding akin to a criminal prosecution under *Younger*. See *id.* In the end, then, and especially given the ongoing proceedings in the Kenosha County Circuit Court to identify a suitable housing option for Threlkeld, we have a difficult time finding fault with the district court's invocation of *Younger*.

At a broader level, and regardless of *Younger*'s application, we see a fatal deficiency in the suit Threlkeld brought in federal court: he named the wrong defendant.

Recognize the nature of Threlkeld's federal lawsuit. He named one and only one defendant—the Secretary of the Department of Health Services in her official capacity—and sought only a declaration of § 980.08's unconstitutionality under the Fourteenth Amendment and an injunction precluding future enforcement of the provision's supervised release housing limitations. Put another way, Threlkeld brought what the law often calls an *Ex parte Young* suit.

*Ex parte Young* suits embrace a legal "fiction" that permits private parties to sue state officials "for prospective relief to enjoin ongoing violations of federal law." *Lukaszczyk v. Cook Cnty.*, 47 F.4th 587, 604 (7th Cir. 2022) (internal quotation marks and citation omitted). The Secretary must have "'some connection with the enforcement' of an allegedly unconstitutional state statute for the purpose of enjoining that enforcement" for Threlkeld to take advantage of *Ex parte Young* and strip the Secretary of the official character of her duties, thereby leaving her open to liability. *Doe v. Holcomb*, 883 F.3d 971, 975 (7th Cir. 2018) (quoting *Ex parte Young*, 209 U.S. 123, 157 (1908)). Otherwise, principles of Eleventh Amendment

sovereign immunity preclude the lawsuit against the Secretary. See *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984).

Therein lies the critical deficiency with Threlkeld's federal action. All agree that the Department of Health Services (and thereby its Secretary) is responsible for devising the supervised release plan and maintaining legal custody of a person during a period of supervised release. See §§ 980.08(4)(f)–980.08(6m). And so too does the Department play a role in assisting Kenosha County with identifying suitable housing arrangements for sexually violent persons authorized for supervised release. See *id.* at § 980.08(4)(dm)(1), (6m). But the Department's playing those roles does not mean the Secretary is the state official charged with overall enforcement of chapter 980 or even § 980.08 specifically.

We see the ultimate responsibility for enforcing chapter 980 as borne by the State's Attorney General, or in some instances, the district attorney in the relevant county. See Wis. Stat. §§ 165.255, 980.02(1) (granting the state department of justice and the district attorney in some circumstances the authority to represent the state in chapter 980 proceedings). Every indication is that Threlkeld's chapter 980 proceedings have consumed substantial resources in the Kenosha County Circuit Court, with the Attorney General—as the State's chief law enforcement officer—representing the State at every stage, including now in the ongoing proceedings designed to identify a compliant housing option. In short, we cannot say that the Secretary has much of a role, if any, in enforcing chapter 980. She therefore lacks a sufficient connection with the enforcement of the law, so Threlkeld cannot lodge an *Ex parte Young* suit against her.

A companion observation follows. By naming the wrong defendant, Threlkeld sought relief against a state official who cannot provide it. And that reality reveals an even more fundamental shortcoming in his federal lawsuit. We lack subject-matter jurisdiction where, as here, the named defendant (the Secretary of Health Services) cannot redress the alleged constitutional injury (a deprivation of liberty for seemingly indefinite civil custody). See *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

So no matter how we approach the appeal and view Threlkeld's federal claim—whether by focusing on *Younger* abstention or on the state officials charged with enforcing Wisconsin's civil commitment program—we see no way to do anything other than affirm the district court's dismissal of Threlkeld's federal action under Fed. R. Civ. P. 12(b)(1).

## III

Today's decision is limited. In no way are we saying that § 1983 constitutional challenges against state actors are always and altogether off limits for sexually violent persons civilly committed under Wisconsin law. But we are saying that Brian Threlkeld's particular lawsuit—challenging enforcement of the housing restrictions in Wis. Stat. § 980.08—does not warrant federal court intervention at a time when Kenosha County continues to search for proper supervised release placement. Federalism concerns take center stage here, where we must carefully consider "the sovereign interests of the State as well as the obligations of state officials to respect the supremacy of federal law." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 649 (2002) (Kennedy, J., concurring); see also *Howe*, 74 F.4th at 851 ("The Fourteenth Amendment's Due Process Clause permits the balance of [] interests

to tip in the state's favor—but only if the state adheres to particular mandates to ensure the liberty restrictions go no further and last no longer than necessary."). And even if we could get beyond those considerations, we have no doubt Threlkeld sued the wrong defendant.

But today's decision should leave no doubt on another front. We see nothing preventing Brian Threlkeld from pressing his constitutional concerns with the application of Wis. Stat. § 980.08 in state court. See *Driftless Area Land Conservancy v. Valcq*, 16 F.4th 508, 524 (7th Cir. 2021) (emphasizing that state courts are "interested in and fully capable of ensuring that state agencies comply with federal due-process requirements"). Civil commitment is serious constitutional business, and the claims Brian Threlkeld sought to pursue in federal court fall squarely in that category.

With these closing observations, we AFFIRM the district court's dismissal for lack of federal subject-matter jurisdiction.