# COURT OF APPEALS
## DECISION
## DATED AND FILED

## August 2, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal Nos.   2022AP524**
**2022AP525**
**STATE OF WISCONSIN**

Cir. Ct. Nos.  2020TP170
2020TP171

**IN COURT OF APPEALS**
**DISTRICT I**

IN RE THE TERMINATION OF PARENTAL RIGHTS TO J.M., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

      PETITIONER-RESPONDENT,

  V.

S. S. M.,

      RESPONDENT-APPELLANT.

IN RE THE TERMINATION OF PARENTAL RIGHTS TO J.M., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

     PETITIONER-RESPONDENT,

  V.

S. S. M.,

     RESPONDENT-APPELLANT.

APPEAL from orders of the circuit court for Milwaukee County: ELLEN R. BROSTROM, Judge. *Affirmed*.

¶1 WHITE, J.[1] S.S.M. appeals from the orders terminating her parental rights to John and James.[2] S.S.M. argues that WIS. STAT. § 48.415 is unconstitutional both facially and as-applied to her cases because the law violates equal protection by requiring the State to provide greater services and safeguards when terminating parental rights to children subject to the Indian Child Welfare Act (ICWA). Further, she argues that the circuit court erred in its consideration of the sixth factor in the best interests of the child considerations for a termination of parental rights (TPR) under WIS. STAT. § 48.426. Upon review, we reject S.S.M.'s arguments and affirm the orders of termination.

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[2] We adopt pseudonyms for the children both for their privacy and because they share the same initials. *See* WIS. STAT. § 809.19(1)(g).

**BACKGROUND**

¶2      S.S.M. is the mother of seven children, Alice, born in October 2010, Diana, born in October 2013, Don, born in November 2015, and twins John and James, born in December 2017, Yvonne, born in November 2018, and Angela, born in January 2021.[3]  When the twins were six weeks old, Department of Milwaukee Child Protective Services (DMCPS) became involved when John suffered bilateral skull fractures and torn upper labial frenulum.  A protective plan was put in place to ensure the children's safety, and from February through June 2018, the children were placed with a maternal aunt under an order for temporary physical custody.  Don and Diana were placed in a different foster resource than John and James, but all of the children were moved into non-family care in June 2018.

¶3      In August 2020, the State petitioned to terminate S.S.M.'s parental rights to John, James, Don, and Diana on the grounds of continuing CHIPS,[4] under WIS. STAT. § 48.415(2), and failure to assume parental responsibility, under WIS. STAT. § 48.415(6).  In December 2020, S.S.M. filed a request to change the children's placement to her mother, F.M.  DMCPS concurrently requested a change of placement of Don and Diana to another foster placement.  The change of placement hearing was conducted over multiple days in February, March, May,

---

[3] As asserted above, the children are all referred to by pseudonyms in accordance with WIS. STAT. § 809.19(1)(g).  Although Alice, Yvonne, and Angela are mentioned within the record, none of them were subject to the TPR proceedings for John, James, Don, and Diana.  Hereinafter, "the children" refers to the four children named in the initial petitions.

[4] "CHIPS is the commonly used acronym to denote the phrase 'child in need of protection or services' as used in the Wisconsin Children's Code, chapter 48, Stats." *Marinette Cnty. v. Tammy C*., 219 Wis. 2d 206, 209 n.1, 579 N.W.2d 635 (1998).

June, and August 2021, which coincided with the ultimate disposition of these case on August 18, 2021.

¶4    In May 2021, S.S.M. filed a motion to dismiss on the basis of constitutional equal protection violation arising out of the TPR grounds statute, WIS. STAT. § 48.415. S.S.M. argued that she was denied equal protection under the law because of the disparate impact the child welfare system has on African-American families, which includes S.S.M., her mother, and her children. Relevant here, she asserted that the court should apply the "active efforts" standard to her case to guarantee the same level of services to her family as required under ICWA, under WIS. STAT. § 48.028(4)(g). The court concluded that it did not have the power to cure her alleged defect in the law upon which S.S.M.'s motion to dismiss was based. It denied the motion to dismiss but stated that S.S.M. could make her arguments after the jury trial on the grounds. A five-day jury trial on the petitions for the four children was conducted before the circuit court in May 2021. The jury returned verdicts findings grounds for the TPR for Diana, Don, John, and James for both continuing CHIPS and failure to assume parental responsibility.

¶5    After the jury verdicts, the change of placement hearings resumed, and the dispositional phase of the TPR proceedings occurred in May, June, and August 2021. S.S.M. renewed her pretrial argument that her constitutional rights of equal protection were violated; however, the court concluded that she failed to prove a constitutional violation. During her case in chief, S.S.M. called an expert witness who studied the historical trajectory of African-American families in Milwaukee, including the impact of segregated residential patterns and institutional challenges in public education, social welfare, and policing. He testified about the social dynamics and "the importance of a healthy cultural identity and its impact on young people."

4

¶6     On August 18, 2021, the circuit court decided both the disposition of the four TPR petitions and the change of placement motions.  The court granted S.S.M.'s change of placement motion in part, ordering Don and Diana to be placed with F.M.  After making a record of its statutory considerations, the court ordered the termination of S.S.M.'s parental rights to John and James.

¶7     S.S.M. appeals the termination of her parental rights to John and James.  The change of placement for Diana and Don is not appealed.  Additional facts are included within the discussion.

## DISCUSSION

¶8     S.S.M. argues that the circuit court erred when it terminated her parental rights to her twin sons for two reasons.  First, she argues that the TPR grounds statute, WIS. STAT. § 48.415, is unconstitutional because it violates equal protection by providing a lower burden on the State to terminate her rights to her children than it does to families subject to ICWA.  Second, she argues that the circuit court failed to consider the best interests of the children in the sixth statutory factor by failing to explain how the TPR would allow them to enter into a more stable and permanent family relationship.

*I.     Waiver of constitutional challenge*

¶9     As a threshold matter, the State argues that S.S.M. failed to comply with the timelines of WIS. STAT. § 48.297; therefore, her constitutional challenge is waived.  Section 48.297 provides that:

> Defenses and objections based on defects in the institution of proceedings, lack of probable cause on the face of the petition, insufficiency of the petition or invalidity in whole or in part of the statute on which the petition is founded shall be raised not later than 10 days after the plea hearing

5

> or be deemed waived. Other motions capable of
> determination without trial may be brought any time before
> trial.

It is undisputed that S.S.M.'s constitutional challenge was made more than ten days after the plea hearing. However, S.S.M. argues that the motion was not challenging the statute "on which the petition [was] founded" because she did not challenge the statutes that control the filing of a TPR petition, either WIS. STAT. §§ 48.42 or 48.417. Further, she contends that this constitutional challenge is a motion "capable of determination without trial" and it was properly raised prior to trial. We agree with S.S.M.'s position and conclude that she has not waived this argument.[5]

## II.   *Constitutional challenge to* WIS. STAT. *§ 48.415*

¶10   We turn to S.S.M.'s constitutional challenge. S.S.M. asserts that her rights to equal protection under the law were violated because in order to prove the grounds for an involuntary TPR, the State has an additional burden for families subject to ICWA that it did not need to meet for S.S.M.'s case or for any non-Indian family. WISCONSIN STAT. § 48.415 sets forth multiple grounds as basis for an involuntary TPR. It also provides in its introduction that:

> If the child is an Indian child, the court or jury shall also
> determine at the fact-finding hearing whether continued
> custody of the Indian child by the Indian child's parent or
> Indian custodian is likely to result in serious emotional or
> physical damage to the Indian child under

---

[5] Although the State argues that S.S.M. has waived her constitutional challenge by not filing it within the ten-day deadline, it does not refute her argument that challenging WIS. STAT. § 48.415 is not a statute on which the petition was founded, implicating WIS. STAT. § 48.297(2). Therefore, we construe the State's failure to refute this argument as a concession. *See United Coop. v. Frontier FS Coop.*, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578 (concluding that a lack of response by a party may be taken as a concession).

s. 48.028 (4) (e) 1. and whether active efforts under s. 48.028 (4) (e) 2. have been made to prevent the breakup of the Indian child's family and whether those efforts have proved unsuccessful, unless partial summary judgment on the grounds for termination of parental rights is granted, in which case the court shall make those determinations at the dispositional hearing.

S.S.M. was found unfit on two grounds: (2) continuing CHIPS;[6] and (6) failure to assume parental responsibility.[7]

¶11    The interpretation of WIS. STAT. § 48.415 and the application of that statue to a given set of facts are questions of law that we review independently.

---

[6] Continuing CHIPS can be established by proving that "the child has been adjudged to be a child … in need of protection or services and placed, or continued in a placement, outside his or her home pursuant" to a relevant court orders. WIS. STAT. § 48.415(2)(a)1. Further, "the agency responsible for the care of the child and the family … has made a reasonable effort to provide the services ordered by the court." § 48.415(2)(a)2.b. Reasonable effort is defined as "an earnest and conscientious effort to take good faith steps to provide the services ordered by the court which takes into consideration the characteristics of the parent or child … the level of cooperation of the parent … and other relevant circumstances of the case." § 48.415(2)(a)2.a. Additionally, the child was "placed outside the home for a cumulative total period of [six] months or longer pursuant to [a statutory order;] that the parent has failed to meet the conditions established for the safe return of the child to the home; and, if the child has been placed outside the home for less than [fifteen] of the most recent [twenty-two] months, that there is a substantial likelihood that the parent will not meet these conditions as of the date on which the child will have been placed outside the home for [fifteen] of the most recent [twenty-two] months…" § 48.415(2)(a)3.

Alternately, the continuing CHIPS ground may be proven if on three or more occasions a CHIPS action has been adjudicated for the child, that the child was placed in out-of-home care pursuant to a court order for those adjudications with proper statutory notice, and that the parent caused the condition that led to the child being placed in out-of-home care. WIS. STAT. § 48.415(2)(am).

[7] Failure to assume parental responsibility is "established by proving that the parent … have not had a substantial parental relationship with the child." WIS. STAT. § 48.415(6)(a). A "'substantial parental relationship' means the acceptance and exercise of significant responsibility for the daily supervision, education, protection and care of the child." § 48.415(6)(b). In evaluating this ground, the court may consider factors including "whether the person has expressed concern for or interest in the support, care or well-being of the child, [or] whether the person has neglected or refused to provide care or support for the child[.]" *Id.*

7

*Tammy W.-G. v. Jacob T.*, 2011 WI 30, ¶16, 333 Wis. 2d 273, 797 N.W.2d 854. "Whether a statute and the application of a statute are constitutional are also questions of law that we review independently." *Id.* When we review a statute, we presume it is constitutional. *Winnebago Cnty. v. Christopher S.*, 2016 WI 1, ¶33, 366 Wis. 2d 1, 878 N.W.2d 109. To overcome that presumption, a party challenging the constitutionality of a statute must "prove that the statute is unconstitutional beyond a reasonable doubt." *State v. Cole*, 2003 WI 112, ¶11, 264 Wis. 2d 520, 665 N.W.2d 328.

¶12 A party may challenge a statute as "unconstitutional on its face" or as-applied to the specific facts of the case. *State v. Wood*, 2010 WI 17, ¶13, 323 Wis. 2d 321, 780 N.W.2d 63. To succeed on a facial challenge, a party must show that the law cannot be enforced under any circumstances. *Christopher S.*, 366 Wis. 2d 1, ¶34. "If a statute is unconstitutional on its face, any action premised upon that statute fails to present any civil or criminal matter in the first instance." *State v Bush*, 2005 WI 103, ¶17, 283 Wis. 2d 90, 699 N.W.2d 80, *holding modified by City of Eau Claire v. Booth*, 2016 WI 65, ¶17, 370 Wis. 2d 595, 882 N.W.2d 738. "In contrast, in an as-applied challenge, we assess the merits of the challenge by considering the facts of the particular case in front of us[.]" *Wood*, 323 Wis. 2d 321, ¶13.

¶13 S.S.M. makes both a facial and as-applied constitutional challenge to WIS. STAT. § 48.415. She argues that WIS. STAT. § 48.415 provides Indian parents with greater protection from having their parental rights involuntarily terminated than it does non-Indian parents. We conclude that S.S.M.'s argument fails because she cannot show that she or other non-Indian parents are similarly situated to a parent whose child is subject to ICWA. Therefore, her right to equal protection under this law has not been violated.

*A. Facial constitutional challenge*

¶14 The Fourteenth Amendment guarantees individuals equal protection under the law. U.S. CONST. amend. XIV, § 1. The same protection is provided in the Wisconsin Constitution and we generally interpret these rights in the same way in the state and federal constitution. WIS. CONST. art. 1, § 1; *Milwaukee Cnty v. Mary F.-R.*, 2013 WI 92, ¶10, 351 Wis. 2d 273, 839 N.W.2d 581. To prove that a statute violates constitutional rights to equal protection, the challenger must show that "the [S]tate unconstitutionally treats members of similarly situated classes differently." *State v West*, 2011 WI 83, ¶90, 336 Wis. 2d 578, 800 N.W.2d 929 (citation omitted). Although identical treatment is not required, the State's discretion to create classifications must have a reasonable and practical basis. *State v. Smith*, 2010 WI 16, ¶15, 323 Wis. 2d 377, 780 N.W.2d 90.

¶15 We begin with the law at issue. The Indian Child Welfare Act (ICWA) of 1978 is a federal law designed to:

> [P]rotect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture, and by providing for assistance to Indian tribes in the operation of child and family service programs.

ICWA, 25 U.S.C. § 1902 (2018). Wisconsin codified the requirements for Indian child welfare at WIS. STAT. § 48.028. That statute provides detailed procedure governing Indian children in custody proceedings as well as providing that the federal ICWA supersedes the Wisconsin children's code, ch. 48, "in any Indian child custody proceeding governed by that act[.]" § 48.028(10). However, "ICWA requires the use of state law whenever that state law provides a higher

standard of protection than is mandated by the ICWA[.]" *I.P. v State*, 166 Wis. 2d 464, 473, 480 N.W.2d 234 (1992).

¶16   Relevant to this analysis, "active efforts" are set forth in Wisconsin's ICWA as "an ongoing, vigorous, and concerted level of case work" taking into account nine activities, most of which connect the Indian child with tribal resources. WIS. STAT. § 48.028(4)(g)1.

> The active efforts were made in a manner that takes into account the prevailing social and cultural values, conditions, and way of life of the Indian child's tribe and that utilizes the available resources of the Indian child's tribe, tribal and other Indian child welfare agencies, extended family members of the Indian child, other individual Indian caregivers, and other culturally appropriate service providers.

*Id.* In an involuntary TPR subject to ICWA, the State must prove active efforts were made regardless of the ground under WIS. STAT. § 48.415.

¶17   ICWA's application is dependent on the status of the child and not the parent. An Indian child is "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe[.]" ICWA, 25 U.S.C. § 1903(4).

¶18   S.S.M. argues that she meets the basic threshold for an equal protection claim because she contends that all parents in a TPR proceeding are similarly situated because they are parents and they face the involuntary termination of their parental rights. We disagree that the two classes of parents are similarly situated. As the State points out, ICWA arises out of the child's status under the law. Children not subject to ICWA do not have a connection to a tribe.

Therefore, there is a distinct difference between parents in TPR proceedings for an Indian child or a non-Indian child.

¶19 Embedded in the "active efforts" requirements in WIS. STAT. § 48.028(4)(g) is access to tribal resources and services, for which there is no equivalent for non-Indian children. Reviewing the active effort activities proves this point.[8] A representative from a child's tribe evaluates the Indian child's family circumstances in light of "prevailing social and cultural standards and child-rearing practice within the tribal community" and assists in "developing a case plan that uses the resources of the tribe and of the Indian community, including traditional and customary support, actions, and services, to address those circumstances." WIS. STAT. § 48.028(4)(g)1.a. Representatives from the child's tribe must be invited to participate in all aspects of the custody proceeding and their advice actively solicited. § 48.028(4)(g)1.b. Extended family members of the Indian child must be notified and consulted to support the family and "to assure cultural connections." § 48.028(4)(g)1.c. Culturally appropriate family preservation strategies must be offered. § 48.028(4)(g)1.e. For a non-Indian family, there is no similar structure for the State to coordinate with for non-Indian children "to assure cultural connections" because for an Indian child subject to ICWA, the culture connection is tied to tribal membership or affiliation.

¶20 The United States Supreme Court has set forth repeatedly and clearly that legislation related to "Indians as such, is not based upon impermissible

---

[8] We recognize that some active efforts activities might not depend on tribal involvement—such as a comprehensive assessment, visitation with transportation, community resources and services, and monitoring of the parent's progress. *See* WIS. STAT. § 48.028(4)(g)1.am., d., f., g. That does not negate that the recurring tribal involvement is embedded in the active efforts standard.

racial classifications. Quite the contrary, classifications expressly singling out Indian tribes as subjects of legislation are expressly provided for in the Constitution and supported by the ensuing history of the Federal Government's relations with Indians." *United States v. Antelope*, 430 U.S. 641, 645 (1977) (footnote omitted).[9] ICWA provides heightened safeguards for Indian children in recognition of the special relationship between the United States and American Indian nations. ICWA sets forth its rationale as follows:

> (1) … Congress has plenary power over Indian affairs;
>
> (2) that Congress … has assumed the responsibility for the protection and preservation of Indian tribes and their resources;
>
> (3) that there is no resource that is more vital to the continued existence and integrity of Indian tribes than their children and that the United States has a direct interest, as trustee, in protecting Indian children who are members of or are eligible for membership in an Indian tribe;
>
> (4) that an alarmingly high percentage of Indian families are broken up by the removal, often unwarranted, of their children from them by nontribal public and private agencies and that an alarmingly high percentage of such children are placed in non-Indian foster and adoptive homes and institutions; and

---

[9] The United States Supreme Court explained:

> Literally every piece of legislation dealing with Indian tribes and reservations … single out for special treatment a constituency of tribal Indians living on or near reservations. If these laws, derived from historical relationships and explicitly designed to help only Indians, were deemed invidious racial discrimination, an entire Title of the United States Code (25 U.S.C.) would be effectively erased and the solemn commitment of the Government toward the Indians would be jeopardized.

*Morton v. Mancari*, 417 U.S. 535, 552 (1974).

> (5) that the States, exercising their recognized jurisdiction over Indian child custody proceedings through administrative and judicial bodies, have often failed to recognize the essential tribal relations of Indian people and the cultural and social standards prevailing in Indian communities and families.

ICWA, 25 U.S.C. § 1901 (footnotes omitted).

¶21 The class of parents in a TPR proceeding with a child subject to ICWA and the class of parents in a TPR proceeding with a child not subject to ICWA are fundamentally different. The Indian child's status is derived from its connection to tribal membership, which is considered a political relationship. Accordingly, the two classes of parents are not similarly situated for purposes of equal protection and S.S.M. has failed to rebut the constitutionality of WIS. STAT. § 48.415 on its face.[10]

¶22 Additionally, S.S.M. asserts there is no basis for not requiring "active efforts" for all TPR cases. She contends that the State would still fulfill its compelling interest in protecting children from unfit parents if it used the active efforts standard for all families. S.S.M. asserts that the more rigorous standard for

---

[10] To the extent that S.S.M. argues that ICWA's heightened safeguards for Indian children violate equal protection, we note that this argument has been rejected in multiple jurisdictions across the country. *See e.g.* *In re A.A.*, 38 Kan. App. 2d 1100, 1104, 176 P.3d 237 (Kan. Ct. App. 2008); *State of Nebraska v. Sonya L.*, 270 Neb. 870, 884, 708 N.W.2d 786 (2006), *disapproved of on other grounds in* *State of Nebraska v. Wendy A.*, 274 Neb. 713, 742 N.W.2d 758 (2007); *Ruby A. v. State of Alaska, Dept. of Health & Soc. Servs.*, No. S-10921, 2003 WL 23018276, unpublished slip op. (Alaska Dec. 29, 2003); *Knight v State of Oklahoma*, 1998 OK CIV APP 118, 964 P.2d 241; *Angus v. Joseph*, 60 Or. Ct. App. 546, 655 P.2d 208 (1982). Our examination did not show any state that reached a contrary outcome. The Fifth Circuit recently concluded that ICWA did not violate equal protection guarantees in a fractured decision. *See* *Brackeen v. Haaland*, 994 F.3d 249, 334, 345 (5th Cir. 2021), *cert. granted sub nom. Nation v. Brackeen*, 142 S. Ct. 1204 (2022), *and cert. granted*, 142 S. Ct. 1205 (2022), *and cert. granted sub nom. Texas v. Haaland*, 142 S. Ct. 1205, (2022), *and cert. granted* 142 S. Ct. 1205 (2022).

"active efforts" will make the State more involved in the parent's life and provide a better position to monitor a child's safety from an unfit parent. S.S.M. ignores the role that tribal representatives play in the "active efforts" activities set forth in WIS. STAT. § 48.028(4)(g). S.S.M. fails to provide legal authority or reasoning for a basis to expand active efforts to children without a tribal affiliation. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) ("We may decline to review issues inadequately briefed.").

### B. As-applied constitutional challenge to WIS. STAT. § 48.415

¶23 We next turn to S.S.M.'s argument that WIS. STAT. § 48.415 was unconstitutional on equal protection grounds as-applied to her. "[I]n as-applied challenges, '[w]hile we presume a statute is constitutional, we do not presume that the State applies statutes in a constitutional manner.'" *Tammy W.-G.*, 333 Wis. 2d 273, ¶48 (citation omitted).

¶24 S.S.M. argues that because she and her family are African-American and not Indian, the State was not required to meet the heightened safeguards for families subject to ICWA. Therefore, the State only had to prove the grounds under WIS. STAT. § 48.415(2) and (6) and the jury did not have to decide whether the State made "active efforts" to provide services to S.S.M. and her children. S.S.M. raises serious concerns about inequities for African-American children and families within the child welfare system and whether more families would succeed at reunification with active efforts being provided to them. However, to the extent that S.S.M. argues that parents facing TPR actions are treated differently because of their race, the classification of Indian children is not race-based and does not

14

violate equal protection.[11] *See **Morton v. Mancari***, 417 U.S. 535, 553 (1974). "As long as the special treatment can be tied rationally to the fulfillment of Congress' unique obligation toward the Indians, such legislative judgments will not be disturbed." *Id.* at 555. The heightened safeguards for children subject to ICWA is rationally tied to the federal policy preserving Indian families. We conclude that WIS. STAT. § 48.415 is not unconstitutional because families become subject to ICWA "not as a discrete racial group, but, rather, as members of quasi-sovereign tribal entities." *Id.* at 554.

¶25 S.S.M.'s arguments simply go beyond a constitutional challenge. The failures that S.S.M. identifies in the social welfare system with regard to African-American families require legislative and not judicial action. S.S.M. also fails to explain who or what would fulfill the intrinsic and necessary role of the tribe within ICWA for non-Indian children. As discussed above, active efforts rely heavily on tribal involvement. S.S.M.'s children's lack of connection to a tribal authority is a fundamental difference between her cases and those involving a child subject to ICWA. S.S.M. was not similarly situated to a parent of a child subject to ICWA facing TPR proceedings; accordingly, she fails to show an equal protection violation in her as-applied challenge.[12] We conclude that WIS. STAT. § 48.415 was constitutional as applied to S.S.M.

---

[11] We note that S.S.M. did not make a racial classification argument in her facial constitutional challenge, instead analyzing it within her as-applied challenge.

[12] Further, SSM argues that she has a fundamental liberty interest in parenting her children. "[A] liberty interest protected by the Due Process Clause arises only when biological parents have taken sufficient steps to establish and protect those rights." *Tammy W.-G. v. Jacob T.*, 2011 WI 30, ¶60, 333 Wis. 2d 273, 797 N.W.2d 854. S.S.M. fails to develop an argument about how she protected those rights or how her rights were infringed upon by Wis. Stat. § 48.415. We decline to address undeveloped arguments. *See **State v. Pettit***, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992).

### III.     Best interest of the child factors in a TPR disposition.

¶26     Finally, we turn to S.S.M.'s argument that the circuit court erroneously exercised its discretion when it terminated her parental rights to John and James.  The decision to terminate parental rights is within the discretion of the circuit court.  *See **Gerald O. v. Susan R.,*** 203 Wis. 2d 148, 152, 551 N.W.2d 855 (Ct. App. 1996).  We will sustain a circuit court's discretionary decision unless the court erroneously exercised its discretion.  WIS. STAT. § 805.17(2).  A circuit court properly exercises its discretion when it examines the relevant facts, applies a proper standard of law, and using a demonstrated rational process reaches a conclusion that a reasonable judge could reach.  ***Dane Cnty. DHS v. Mable K.***, 2013 WI 28, ¶39, 346 Wis. 2d 396, 828 N.W.2d 198.  This court "will search the record for reasons to sustain the [circuit] court's exercise of discretion."  ***Lofthus v. Lofthus***, 2004 WI App 65, ¶21, 270 Wis. 2d 515, 678 N.W.2d 393.

¶27     We return to the facts.  On August 18, 2021, the circuit court decided both the disposition of the four TPR petitions and the change of placement motions.  The court began noting that "the role of [F.M.] in this case has not really been accurately evaluated" and that misconceptions about F.M.'s protective capacity were embedded in the case.  The court stated that Diana and Don's current foster placement was not an adoptive resource, and that while DMCPS had identified a new placement that was an adoptive resource, "the kids … are certainly no more bonded with [the proposed foster placement] than they are with [F.M.]  They've known [F.M.] their whole lives."  The court granted S.S.M.'s change of placement motion in part, ordering Don and Diana to be placed with F.M.

¶28    In contrast, the court concluded it would grant the TPR for John and James and made an oral and written ruling discussing the required statutory considerations.[13]  The court considered that the twins would likely be adopted by their foster mother and that their three-year-old age and good physical health were not barriers to adoption.  The court stated it was hard to judge the substantial relationship of the twins with S.S.M. or her family, but that severing the bonds would not harm the twins.  The court acknowledged that the foster mother's willingness to maintain family relationships could mitigate harm.  The court stated that at three-years-old, the twins were too young to understand adoption and express their wishes, but the bonding the twins showed with their foster mother supported that they would want to stay in the only home they have known.  The court noted that the duration of separation has been nearly their entire lives

---

[13] WISCONSIN STAT. § 48.426 sets forth the court's considerations when deciding a disposition of a TPR petition.  "The best interests of the child shall be the prevailing factor considered by the court in determining the disposition of all proceedings…" Sec. 48.426(2).

"In considering the best interests of the child under this section the court shall consider but not be limited to the following:

(a) The likelihood of the child's adoption after termination.

(b) The age and health of the child, both at the time of the disposition and, if applicable, at the time the child was removed from the home.

(c) Whether the child has substantial relationships with the parent or other family members, and whether it would be harmful to the child to sever these relationships.

(d) The wishes of the child.

(e) The duration of the separation of the parent from the child.

(f) Whether the child will be able to enter into a more stable and permanent family relationship as a result of the termination, taking into account the conditions of the child's current placement, the likelihood of future placements and the results of prior placements.

Sec. 48.426(3).

because they have been in out-of-home care since they were each six-weeks-old. Finally, the court concluded that the children would be able to enter into more stable and permanent family arrangements as a result of the termination.

¶29     S.S.M. argues that the circuit court's error in discretion arose in its consideration of the sixth factor, which requires the circuit court to consider "[w]hether the child will be able to enter into a more stable and permanent family relationship as a result of the termination…" WIS. STAT. § 48.426(3)(f).[14]  She argues that the court did not explain why terminating her rights to John and James would allow them to enter into a more stable living situation when the court concurrently concluded that termination was not in Diana and Don's best interests. She contends that placing John and James with F.M. could provide similar stability and that the circuit court failed to explain why it would not. "Adequate findings must be made in order to protect the rights of litigants and to facilitate review of the record by an appellate court." *Minguey v. Brookens*, 100 Wis. 2d 681, 687, 303 N.W.2d 581 (1981).

¶30     We conclude that the court's findings were adequate to support its decision to terminate S.S.M.'s parental rights to John and James, even in light of the court not terminating her rights to Diana and Don.  The record reflects the importance the court placed on the continued stability for John and James if the TPR were granted.  The twins had been in the same foster placement for the vast majority of their lives and their foster mother wanted to adopt them.  The court

---

[14] We do not interpret S.S.M. to dispute the circuit court's considerations of the first through fifth factors.  "While it is within the province of the circuit court to determine where the best interests of the child lie, the record should reflect adequate consideration of and weight to each factor." *State v Margaret H.*, 2000 WI 42, ¶35, 234 Wis. 2d 606, 610 N.W.2d 475.  Our review of the record supports that the circuit court addressed all six factors, on the record.

expressed hope that "more stable and permanent family relationship," would help with some behaviors the twins had exhibited. The court's concern for "stability and permanence" also came through when it concluded that the need for stability outweighed any harm from severing S.S.M.'s parental rights.

¶31 "The decision whether to terminate a parent's rights to a child can be one of the most wrenching and agonizing in the law." *Sheboygan Cnty. DHS v. Julie A.B.*, 2002 WI 95, ¶29, 255 Wis. 2d 170, 648 N.W.2d 402. Although it may frustrate S.S.M. that Diana and Don's dispositional findings were different than John and James's dispositional findings, the record reflects the circuit court considered the best interests of each child. Its reasoning for Diana and Don differed than its reasoning for John and James due to their individual histories in out-of-home care. The circuit court highlighted the bond that existed between the twins and their foster mother, which included that the twins could not remember any other home than their foster mother's, and they called her "mama." In contrast, Diana and Don had known F.M. their entire lives and were not bonded with the proposed foster placement. The court stated that it thought Don and Diana would wish to "remain in this extended family" with F.M., but that might have been "different if they were like the twins who are bonded to their [foster mother.]"

¶32 We conclude that the circuit court considered the relevant facts of each child's history and circumstances, applied the proper standard of law, and demonstrated a rational decision-making process to reach a conclusion that a reasonable court could reach. *See Mable K.*, 346 Wis. 2d 396, ¶39. Therefore, the circuit court did not erroneously exercise its discretion when it terminated S.S.M.'s parental rights to John and James.

19

## CONCLUSION

¶33     For the reasons stated above, we conclude that S.S.M. has failed to show that WIS. STAT. § 48.415 is unconstitutional either facially and as-applied. Further, the circuit court's exercise of discretion was not erroneous when it found termination of S.S.M.'s parental rights was in the best interests of John and James.

        *By the Court.*—Orders affirmed.

        This opinion will not be published.    *See* WIS. STAT. RULE 809.23(1)(b)4.